114 So.2d 295

Robert Elmore SMITH

v.

STATE.

5 Div. 546.

Court of Appeals of Alabama.

Aug. 18, 1959.

John Patterson, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

Wilbanks & Wilbanks, Alexander City, for appellant.

PRICE, Judge.

The indictment charged that defendant, against the order of nature, carnally knew Annie Ruth Spivey. Title 14, Sec. 106, Code 1940.

The state's evidence is fairly and substantially set out in the Attorney General's brief in this language.

"The prosecutrix in this case was at the time of the offense charged a resident of Alexander City, Alabama. Sometime in the year 1957 around 11:00 P.M. she was standing in her yard near her front porch. The State's evidence tends to show that she observed the appellant coming toward her just as she started back into her home. The appellant came up to the witness; grabbed her by the collar with one hand; held a knife in the other and told her to keep walking until he told her to stop. The appellant forced the witness to walk down the road for some distance and stopped, there he forced her to commit an unnatural sex act with him. Then he forced her to move on to the basement of one Bragg White's house. In the basement he apparently attempted intercourse with her but was unsuccessful. Then he made the prosecutrix move to a closet or outhouse back of another house where he again forced the prosecutrix to commit an unnatural sex act. The appellant then threatened to kill the witness, whereupon she grabbed his wrist. At this time the coat she was wearing was cut. This coat was duly admitted into evidence as an exhibit for the prosecution. During the struggle the prosecutrix managed to escape and ran into some nearby woods. She stayed there until morning and then went to her sister's home and told said sister what had transpired. Thereafter, she went to the local police headquarters and reported the affair. The sister of the prosecutrix testified that the prosecutrix came to her home early in the morning and made a statement to her in the nature of a complaint against the appellant."

Prosecutrix testified she told Officer Pike defendant cut her coat, and she took the coat with her when she went to swear out the warrant.

Defendant testified Annie Ruth Spivey called to him as he was walking down the street. She asked where he was going and suggested they go to the Bragg White's basement. There they engaged in an act of sexual intercourse, which was with prosecutrix' consent. When they left the basement prosecutrix demanded $20 from defendant. When he told her he had no money, she said: "You are going to need $20.00, because I am going to get a warrant for you for rape." Defendant denied that he had ever committed a crime against nature with prosecutrix or with anyone else.

Mr. John Pike, deputy sheriff of Tallapoosa County, and Lieutenant Henry Pless, of the Alexander City police force, testified they talked with Annie Ruth Spivey at the police station when complaint was made in this case. Prosecutrix never showed them the coat, did not mention having been cut herself or of the coat's hav-

ing been cut, and in fact never mentioned the coat.

The evidence presented questions for the jury's determination, and was sufficient to sustain the judgment of conviction. There was no error in the court's refusal of the affirmative charge nor in the denial of the motion for a new trial.

 It is insisted the court erred in allowing Bessie Lawson, sister of Annie Ruth Spivey, to testify that early Sunday morning prosecutrix made a complaint to her about Elmore Smith.

The settled rule is that on direct examination in prosecutions for rape, carnal knowledge and like offenses, such testimony is confined to the fact that complaint was made, and where and to whom it was made. The details of the occurrence and the identity of the person accused must not be shown. Daniell v. State, 37 Ala.App. 559, 73 So.2d 370; Hall v. State, 248 Ala. 33, 26 So.2d 566. However, in view of defendant's testimony that he was present at the time and place stated by Annie Ruth Spivey, and that he had intercourse with her and with her consent, admission of such evidence was without injury. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix; Hall v. State, supra.

 On cross-examination of defendant as a witness in his own behalf, the following occurred:

"Q. (By Mr. Adair) Elmore Smith, I will ask you whether or not you have ever been convicted and sent to a penitentiary?

"Mr. Wilbanks: And we object to that, Your Honor.

"The Court: Overruled.

"Mr. Wilbanks: We reserve an exception.

"The Court: It will have to be for a felony, a crime involving moral turpitude.

"Mr. Adair: Yes, sir.

"The Court: Ask him what for.

"Q. I will ask you whether or not you were convicted of a charge of malicious shooting and wounding in Jefferson County Circuit Court, Criminal Division, and received therefor a ten year prison sentence? A. I was innocent of that charge, but I did pull the time.

"Q. You were convicted of that? A. That's right, I was.

"Q. Where was that? A. Louisville, Kentucky.

"Q. When was that? A. In '47.

"The Court: Gentlemen, that is limited altogether to shed light on the credit that you would give one who had been previously convicted of a felony and it is admitted for no other purpose."

It is insisted that the court was in error in permitting the state to show defendant's conviction in the state of Kentucky, because it was not shown he was convicted of an offense involving moral turpitude. Appellant's counsel contends the offense of shooting and wounding is analogous to the Alabama crime of assault and battery with a weapon, an offense not involving moral turpitude. Chappelle v. State, 267 Ala. 37, 99 So.2d 431. Although we think the question was not properly raised, since no such ground of objection was made to the question as first framed and no objection was interposed to the question as rephrased, we would point out that in Dickey v. State, 32 Ala.App. 413, 26 So.2d 532, it was said that ordinarily the conviction of a crime punished by imprisonment in the penitentiary involves moral turpitude within the meaning of Sections 434 and 435, Title 7, Code 1940.

"Moral turpitude signifies an inherent quality of baseness, vileness, depravity," Gillman v. State, 165 Ala. 135, 51 So. 722, 723; Moore v. State, 12 Ala.App. 243, 67

So. 789. It excludes unintentional wrong, or an improper act done without unlawful or improper intent. Drazen v. New Haven Taxicab Co., 95 Conn. 500, 111 A. 861. " 'Malicious' means with fixed hate, or done with wicked intentions, or motives not the result of sudden passion." Martin v. State, 119 Ala. 1, 25 So. 255, 257. We are of opinion showing of a conviction of a malicious shooting of another is analogous to proof of a conviction of an assault with intent to murder which is a crime involving moral turpitude and affects the credibility of a witness. Willams v. State, 27 Ala. App. 293, 171 So. 386.

■ The prosecutrix, to a question asked by defense counsel, "You know, as a matter of fact, that Bragg and Elmore don't even speak, don't you?" Answered, "No, sir, I didn't know it." Objection was made to the question after it was answered, and sustained by the court. The answer was not excluded. The ruling, if error, was without injury. Watson v. State, 15 Ala. App. 39, 72 So. 569.

■ There was no error in the court's refusal to allow defendant to testify prosecutrix had had sexual intercourse with other persons. Green v. State, 19 Ala.App. 239, 96 So. 651; Waller v. State, 35 Ala. App. 511, 49 So.2d 232, and cases there cited.

■ Appellant insists the court committed reversible error in refusing his motion for a new trial on the ground of newly discovered evidence. This evidence consisted of affidavits of state's witness Johnny Pike, and Woodrow Tate and Homer Kennedy, police officers of Alexander City, in which they swore that Annie Ruth Spivey had been drinking on Sunday when she came to the police station to make complaint against Elmore Smith, and an affidavit by one Fred Thomas that on the Saturday night in question he was walking up the street with defendant when he saw prosecutrix leave her home and walk up the street and stop. After witness left defendant and was proceeding in the direction of his home, he turned around and saw that Annie Ruth Spivey had crossed the street and started in the same direction defendant was taking. At that time defendant was still ahead of her in the street. The witness further deposed that he was asked about the matter before trial, but at that time had said he didn't remember the incident, for the reason that he was related to both parties and didn't want to testify as a witness. He also said that based on the fact that she staggered some as she walked it was his opinion Annie Ruth Spivey had been drinking on Saturday evening.

The evidence as to prosecutrix' drinking was evidently in rebuttal of her testimony on cross-examination that she had not been drinking that night, and had had nothing to drink since her illness two years before the trial. She also testified on cross-examination she didn't see Fred Thomas on Saturday night after she left home.

A motion for a new trial on the ground of newly discovered evidence is addressed largely to the trial court's sound discretion. Welch v. State, 28 Ala.App. 273, 183 So. 879, certiorari denied 236 Ala. 577, 183 So. 886. Newly discovered evidence to warrant a new trial must be undiscoverable with reasonable diligence before the trial; must be such as would probably produce a different result on a retrial of the case; must be material to the issue; must not be merely impeaching or cumulative. Folmar v. State, 22 Ala.App. 317, 116 So. 110. The defendant not only has failed to bring himself within the rule by showing diligence in procuring the evidence for the trial, but the evidence itself is merely in impeachment of prosecutrix and would probably not have changed the result of the trial. The trial court did not abuse its discretion in denying the motion.

The judgment appealed from is affirmed.

Affirmed.